# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

DR. DARA PARVIN,

6:10-CV-6332-TC

Plaintiff,

v.

ORDER

CNA FINANCIAL CORPORATION dba
"CNA INSURANCE COMPANY" and
CONTINENTAL CASUALTY COMPANY,

Defendants.

COFFIN, Magistrate Judge:

Plaintiff, Dr. Dara Parvin, asserted several claims for relief in this action against defendants

CNA Financial Corporation dba "CNA Insurance Company" and Continental Casualty Company.

This Court previously dismissed plaintiffs' tort claims (#199, #200, #224). Presently before the

court is defendants' motion (# 202) for summary judgment on plaintiff's breach of contract claim.

Page 1 - ORDER

## **Legal Standard**

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits
> show that there is no genuine issue as to any material fact and that the movant is
> entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists

or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477

U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant

to produce specific evidence to establish a genuine issue of material fact or to establish the existence

of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th

Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir.

2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials

in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for

trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable

substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes

are genuine if they "properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all

reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not

significantly probative," summary judgment may be granted. Id.

Page 2 - ORDER

## **Factual Background**

Plaintiff Dr. Dara Parvin's professional liability insurance policy with Continental Casualty Company (the "insurer") was a custom group policy sponsored by the Oregon Medical Association ("OMA") and offered to its qualified members. The policy offered preferred rates in exchange for a mechanism to restrain costs, specifically, a provision allowing the insurer to settle claims even when the physician does not consent by obtaining an overriding consent from the OMA.

The insurer's standard-form policy states "we will ... not settle any claim without your consent." Ex. 1. However, the policy sponsored by the OMA –plaintiff's policy - replaces that language with an "AMENDATORY ENDORSEMENT - MEDICAL PRACTITIONERS OREGON MEDICAL ASSOCIATION (Claims-Made Program)" which provides "We will ... Not settle any claim without your consent, or the consent of the Association's Committee formed to this purpose." Id. (Emphasis suppplied) That committee- the OMA's Professional Consultation Committee ("PCC") – has nine to eleven voting members, all of whom are physicians. Ex. 11.

Plaintiff's complaint claims CNA breached the policy by settling Gloria Mason's malpractice lawsuit against him.   Mason accused Parvin of paralyzing her during a kypholasty surgery by crossing the needles and puncturing her spinal cord. On July 16, 2008, about a week before trial, the PCC convened to consider the insurer's request for consent to settle, in view of Dr. Parvin's objection to settlement.  After hearing Parvin, (who attended by phone) and his attorney, the PCC deliberated in private and reached a decision about granting consent.

The next morning, the OMA's general counsel, Paul Frisch, conveyed by telephone the PCC's decision to CNA's liason to the OMA, Melanie Spiering. CNA's internal record of the conversation "was that we proceed to trial with the following parameters," including that CNA "need[s] to be

Page 3 - ORDER

prepared to settle at any time through the trial." Ex. 4. At the time, however, Ms. Speiring

interpreted this communication to mean that the PCC had not yet consented to a settlement.

During the third day of the trial, Parvin began presenting his defense. That afternoon, Ms.

Spiering emailed Mr. Frisch a request for the PCC to again consider granting consent: "We would

like to request a tentative conference call with the PCC tomorrow afternoon at 5:00 PM to further

discuss consent in the Mason v. Parvin trial. " Ex. 5 . The Chair of the PCC, Charles Rosenblatt,

responded the next morning, on the fourth day of trial, and stated his understanding that the PCC

already had decided to consent at the earlier meeting: "I thought we authorized cna to settle at any

time they thought appropriate." Ex. 6.

Soon thereafter, CNA received written confirmation from the PCC that it had consent to settle

the case. At 10:57 am, Mr. Frisch emailed Spiering:

> This is to confirm that you have spoken by phone with Dr. Rosenblatt
> [sic] this morning and he conveyed to you agreement with the
> sentiment expressed below by Dr. Graham. Therefore, the **PCC has**
> **already given its consent to settlement** in the Parvin case and **once**
> **Dr. Parvin has had his 'day in court'** then CNA claims personnel
> are authorized to enter into settlement discussions if in their opinion
> settlement is appropriate.

Ex. 9 (emphasis added). The "sentiment expressed below" referred to in Mr. Frisch's email was in

an email from PCC member Michael Graham:

> I spoke with Chuck Rosenblatt this morning about the need for a
> conference call re Parvin. We both agree that at the PCC meeting we
> advised that **CNA should give Parvin his day in court ... but that**
> **they should have someone at the trial with authority to settle the**
> **case** if it appeared it could be done for a reasonable amount or it
> appeared we were headed for a likely loss... I do not see the need for
> a meeting now to go over things again, especially at the eleventh
> hour when many of the PCC may not be available, myself included.

> It appears to me that **this is now in the hands of CNA to call the shots**.

Id. (Emphasis added). Eleven minutes later, at 11:08 am, Mr. Frisch sent another email to Ms.

Spiering, copying all members of the PCC:

> Per Dr. Rosenbaltt's [sic] emails below, I have sent word to Melanie that the committee **has already authorized CNA to settle the case at anytime it deemed appropriate following the testimony of Dr. Parvin**. Therefore, it will not be necessary to have a conference call this evening at 5pm.

Ex. 6.

At 11:18 am, afer receiving these emails, Ms. Spiering emailed Norene Quam, the CNA claim

specialist handling the Mason claim and attending the trial, copying other CNA employees:

> I spoke to Dr. Chuck Rosenblatt, chair of the PCC and have received word that the Professional Consultation Committee has agreed to consent for settlement in the Mason v. Parvin case.
> The meeting scheduled for 5:00 today will be canceled.  GOOD LUCK!

Ex. 23.

During this fourth day of trial, Parvin finished testifying and then a defense expert testified. Ms.

Quam subsequently informed Dr. Parvin that the PCC had consented to a settlement. After the trial

day ended, Ms. Quam approached Mason's attorney to attempt to settle the case. After multiple

offers and counteroffers, CNA accepted Mason's final offer, and the parties settled late that evening

for $1,500,000. Mason had sought $4,225,138, and Parvin's available policy limit was $4,775,000.

Ex. 8.

Page 5 - ORDER

## DISCUSSION

Defendant CNA's motion for Summary Judgment on Plaintiff's remaining breach of contract claim is granted for two independent reasons, each of which is fatal to this action.

1.      The undisputed evidence conclusively establishes that the OMA gave its consent for

CNA to settle the Mason malpractice suit against Dr. Parvin.

Although plaintiff cites Ms. Spiering's interpretation of OMA's counsel Paul Frisch's telephonic communication of PCC's decision as evidence that the PCC (and thus OMA) had not consented to a settlement of the Mason lawsuit, the evidence conclusively establishes that this was a misunderstanding on her part and that OMA subsequently clarified that the PCC had consented to settlement. To reiterate, the final e-mail sent by OMA's general counsel to CNA representative Spiering (which was copied to all members of the PCC) was clear and unequivocal on the issue of consent:

> "Per Dr. Rosenbaltt's [sic] emails below, I have sent word to Melanie that the committee **has already authorized CNA to settle the case at anytime it deemed appropriate following the testimony of Dr. Parvin.** Therefore, it will not be necessary to have a conference call this evening at 5pm."

(Email of OMA general counsel Paul Frisch, Ex. 6).

After this confirmation of consent to settle from OMA was received by CNA on the morning of the fourth day of trial, Dr. Parvin concluded his testimony and the presentation of all available evidence in his defense.[1]

---

[1]A potential defense expert witness was experiencing transportation problems and Dr. Parvin's trial counsel informed the Court after trial had recessed for the day that he was "not sure if we're going to have somebody tomorrow. "

Page 6 - ORDER

As noted previously, during the evening recess, CNA and counsel for Gloria Mason negotiated a 1.5 million-dollar settlement of her malpractice claim against Dr. Parvin, who subsequently filed this action against his insurer in which he contends that CNA breached its contract in settling the Mason lawsuit and that the settlement damaged his medical practice and caused lost income in excess of $22,000,000.

In essence, Plaintiff all but ignores the provision of his malpractice policy which allows CNA to settle a malpractice claim against him either with his consent or the consent of the PCC. He has even argued that CNA owed him a duty of good faith not to settle after he expressed concern that a settlement would adversely impact his practice. In making this argument, he relies on Oregon case law holding that an insurer can be liable on a bad faith claim (sounding in tort) for failing to settle a claim within the policy limits when an insured is exposed to a judgment in excess of those limits. See, e.g., Georgetown Realty v. Home Ins. Co., 831 P.2d 7, 14 (1992).

No Oregon case, however, has ever held that an insurer can be liable on a bad faith claim when it settles a claim within limits pursuant to the express contractual provisions of the policy. What the Plaintiff attempts to do here is transform the preferred rate policy he obtained into the CNA standard form policy he did not obtain (allowing settlement only with the consent of the insured). The inherent duty of each party to a contract to act in good faith in fulfilling its obligations toward the other does not require rewriting the contract at the other party's insistence.

On its plain terms, the policy authorized CNA to settle the Mason lawsuit if it had the consent of the PCC. The evidence is undisputable that PCC consented to the settlement. Dr. Parvin's attempt to dismiss the e-mails which evidence that consent as "hearsay" is unavailing. As CNA correctly points out, expressions of consent to show that consent was expressed are not hearsay. See:

Page 7 - ORDER

United States v. Aikins, 946 F2d 608, 614 (9th Cir 1990) (holding that expression of "consent was not hearsay but a verbal act."); United States v. Mena, 863 F2d 1522, 1531 (11th Cir. 1989) ("The portion of the document explicitly granting consent to board the [ship] is not hearsay at all; but rather a verbal act...").

The e-mails from OMA's general counsel (including one copied to all the PCC members) clearly and unequivocally communicated the requisite consent to settle the Mason lawsuit in the manner CNA subsequently did.  Dr. Parvin, notwithstanding the opportunity to conduct full discovery in this matter, has failed to produce any evidence that contradicts the content of the e-mails or otherwise put into issue the fact that the PCC authorized CNA to settle the case.  The initial misunderstanding of Ms. Spiering, subsequently and emphatically clarified by the OMA and PCC e-mails, does not create a jury issue.  Plaintiff's breach of contract claim fails because CNA settled the Mason malpractice claim against him with the consent of the PCC and thus complied with the express terms of the insurance contract.

2.    Plaintiff has no admissible evidence that the Mason settlement caused any economic damages.

Although it is unnecessary to reach the issue of damages in view of my ruling that CNA did not breach its contract with Dr. Parvin, the Court finds that an alternative ground for granting CNA's Motion for Summary Judgment is that plaintiff has  failed to produce competent and admissible evidence that he suffered any economic damages from the Mason settlement.

It is settled that "Proof of damages caused by the defendant's nonperformance is an essential element of a breach- of- contract claim."   Duffy Oregon Glass Co., No. 06-1579, 2008 WL 1925038, at *5 (D. Or. Apr. 29, 2008) (Brown, J.) (Citing Moini v. Hewes, 763 P.2d 414, 417 (Or.

Page 8 - ORDER

App. 1988) (Graber, J.) ("Damage is an essential element of any breach of contract action.")).  In Rizio v. U-Lane-O Credit Union, 37 P.3d 220, 222 (Or. App. 2001), the Oregon Court of Appeals did not have to reach the underlying question of whether the defendant breached the agreement because the  plaintiff did not prove that he was damaged,  "The trial court correctly rejected plaintiff's claim for breach of contract, because the alleged damages were not caused by the alleged breach."

Here, Dr. Parvin has adduced no competent evidence that the Mason settlement was the cause of any lost job opportunities, any reduction in revenues from his medical practice, or any reduction in value of his real estate holdings.  As defendant points out, Dr. Parvin had other malpractice lawsuits besides the Mason claim filed against him as well as a sexual harassment claim and had blamed other doctors in the community in which he practiced for his decline in income and surgeries. CNA also has established that Dr. Parvin's revenue was declining for several years before  the Mason settlement (which occurred in July 2008).

This is not to say, of course, that the Mason settlement could not have had a negative impact on Dr. Parvin's income (and thus his real estate holdings which declined in value) but it is incumbent upon the plaintiff to produce specific evidence that the Mason settlement was the cause or a cause of his lost income.  Celotex Corp v. Catrett, supra.   Such is utterly lacking here.

Plaintiff has no evidence from prospective employers with whom he applied after the Mason settlement that any of them rejected his application because of that settlement.  Indeed, he opted not to depose them regarding their reasons despite having the opportunity to do so before the close of discovery.  Instead, Dr. Parvin cites an exhibit he himself has prepared listing lost job opportunities and potential compensation and specifying the "reason for denial" as the Mason settlement..

Page 9 - ORDER

Plaintiff's Ex. 13. This is simply a conclusory, self-serving assumption on his part that is devoid

of evidentiary support. In fact, the only documentation from any prospective employer in the

summary judgment record is an email from a Phoenix, Arizona hospital that indicates that they lost

interest in him because:

> (h)e had voluminous documentation on legal suits, including one for
> sexual harassment, that were dismissed, but one was outstanding.[2]
> His explanation was that he practiced in a small town in Oregon and
> there were docs who were trying to get rid of him and allegedly paid
> two of his workers to file the harassment suit that was dismissed. The
> whole thing just felt weird and we stopped working with him...

Def.'s Ex. 25.

Plaintiff cannot salvage his evidentiary deficiencies on damages by dressing his conjectures in

the expert suit of his accountant, William Mason (no relation to Gloria Mason). Although CPA

Mason has opined that Dr. Parvin's lost compensation "as a result of the actions of CNA" is

$22, 508, 684, that figure is based entirely on projections that were calculated by factoring in Dr.

Parvin's assumptions as to the Mason settlement being the cause of the lost job opportunities.[3] The

expert opinion fares no better than its foundation and is inadmissible under F.R.E. 702:

> If scientific, technical or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training or education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient facts or data,

---

[2]This was not a reference to the Mason settlement, but is a different malpractice claim
(the Sturdivant lawsuit). .

[3]For example, in his rebuttal report dated July 12, 2012, CPA Mason states "if the Gloria
Mason settlement had not tainted Dr. Parvin's record, he believes he would have found
employment in approximately August 2008."

> (2) the testimony is a product of reliable principles and methods, and
> (3) the witness has applied the principles and methods reliably to the
> facts of the case.

(Emphasis supplied).

Here, Mason's proffered opinion is bereft of sufficient facts and data to support it, is not the

product of reliable principles and methods, and thus is not competent as admissible evidence of

damages. See , Jesson v. Colton, 895 P.2d 354, 355 (Or. App. 1995) (to recover for lost profits or

sales, plaintiff must establish damages with "reasonable certainty" and cannot recover damages for

future lost profits or sales based on "nothing more than unverifiable expectations of profits.").

## Conclusion

Defendants' motion(#202) for summary judgment is allowed and this action is dismissed. All

other pending motions are denied as moot.

DATED this ___3___ day of October, 2013 .

THOMAS M. COFFIN

United States Magistrate Judge

Page 11 - ORDER